## Schock, to use, v. Miller et al.

*Paul A. Mueller*, for plaintiff; *Charles W. Eaby*, for defendants.

LANDIS, P. J., June 21, 1930.—The facts of this case were not in dispute. On Nov. 3, 1928, P. Frank Schock made an agreement with Harry P. Miller, whereby Schock leased to Miller one used Oakland sport roadster automobile for a total payment of $718. Of this, $406 was paid on or before delivery, and the balance of $312 was to be paid in twelve instalments of $26 each. The lease provided that "time is of the essence of this contract, and if the lessee default in complying with the terms hereof, the lessor may take immediate possession of said property without demand, . . . and for this purpose lessor may enter upon the premises where said property may be and remove the same; thereupon all rights of the lessee hereunder in said property and in the payments theretofore made shall terminate absolutely." Another provision of the lease was that "the assignee shall be entitled to all the rights of the lessor." The lease was subsequently assigned by Schock to the General Motors Acceptance Corporation. It appears that Miller defaulted on his payments, and, therefore, the assignee, having given bond in the sum of $650, on Dec. 18, 1928, issued a writ of replevin for the possession of the automobile against Miller. The sheriff took possession of it, at the same time serving the writ, not only upon Miller, but upon John G. Gibble, in whose possession the car was found. On Dec. 21, 1928, Gibble presented his petition, asking to intervene, alleging that the car belonged to him, and permission being

granted, he filed a counter-bond in the sum of $24 and retained possession of the automobile. The claim made by Gibble was that a writ of fi. fa. was issued against Miller by him; that the automobile was levied upon and sold by the sheriff, and that he purchased it at that time.

It does not seem to be contended at the present time that the agreement between Schock and Miller was anything but a bailment lease. That being so, the sheriff's sale to Gibble did not pass the ownership of the car to him. He could obtain no higher rights than Miller, and as Miller did not have the title of ownership, Gibble could not in this way obtain it. It is true that Schock purchased the car from Leon Kramer, and the certificate of registration was made by Kramer to Miller, subject to the encumbrance in favor of the plaintiff; but this arrangement, which is common in the automobile trade, even though questionable, did not vitiate the lease between Schock and Miller and vest such title in Miller as could be levied upon on a judgment given by Miller to Gibble and pass title to the automobile to Gibble. In Braham & Co. v. Steinard-Hannon Motor Co., 97 Pa. Superior Ct. 19, it was held that where the owner of a motor vehicle turns it over to a dealer on account of a new car, and the dealer sells it to a third person under a bailment lease, the fact that the certificate of title is transferred directly from the original owner to such purchaser, instead of its being transferred to the dealer and from him to the new purchaser, even though the transaction be in violation of the Act of May 24, 1923, P. L. 425, amended by the Act of April 27, 1925, P. L. 286, does not change the transaction from a bailment into ownership so as to make the vehicle liable to execution for debts of the purchaser as against the dealer from whom it was leased.

It is, however, urged by counsel for the intervening defendant that because the plaintiff in its declaration failed to state the value of the automobile, it could not offer such proof upon the trial. This position cannot, in our judgment, be sustained. It must be remembered that this suit is an action of replevin; that it was not brought to recover damages, but for the automobile itself. The fourth section of the Act of April 19, 1901, P. L. 88, provides that "the plaintiff in such action [replevin] shall file a declaration, verified by oath, which shall consist of a concise statement of his demand, setting forth the facts upon which his title to the goods and chattels is based." That is exactly what the plaintiff did. The seventh section of the same act declares that "if the title to said goods and chattels be found finally to be in a party who has not been given possession of the same in said proceeding, the jury shall determine the value thereof to the successful party, and he may, at his option, issue a writ in the nature of a writ of *retorno habendo*, requiring the delivery thereof to him, . . . and upon failure so to recover them, or in the first instance, he may issue execution for the value thereof and the damages awarded and costs; or he may sue in the first instance upon the bond given, and recover thereon the value of the goods and chattels, damages and costs, in the same manner that recovery is had upon other official bonds." It was, therefore, necessary for the plaintiff to prove the value of the automobile in order that the jury should have some basis upon which to determine its value. It was for this reason that the court charged the jury: "The defendant gave his bond and kept this automobile. We tell you that you shall render a verdict in favor of the plaintiff, and, therefore, when you do that, you must say how much that automobile was worth at the time he took possession and kept it. The only evidence on that subject before you is that of Mr. Schock. I think, if my memory serves me right, he said that the automobile was worth $675. If you find that to be true, then your verdict will be in favor of the

plaintiff, and you will say then, 'and we find the value of the automobile to be $675,' or whatever sum you desire to fix." Counsel, at the end of the charge, interposed and said they agreed that the automobile should be valued at $335.92, and it was so stated to the jury. The verdict is so entered.

We find no error in the case as tried, and we, therefore, overrule the motion for judgment *non obstante veredicto* and discharge the rule for a new trial.

Motion overruled and rule discharged.

From George Ross Eshleman, Lancaster, Pa.